IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ELAINE L. CHAO, Secretary of Labor, <br> United States Department of Labor, <br><br> Plaintiff, <br><br> v. <br><br> LOCAL 311, NATIONAL POSTAL <br> MAIL HANDLERS UNION, AFL-CIO, <br><br> Defendant. | § <br> § <br> § <br> § <br> § Civil Action No. 3:99-CV-2349-M <br> § <br> § <br> § <br> § <br> § <br> § |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's Motion for Summary Judgment, filed October 31, 2000, and Defendant's Cross-Motion for Summary Judgment, filed February 7, 2001, the briefs in support thereof, and all responses thereto. Plaintiff Elaine L. Chao, the Secretary of Labor ("the Secretary"), commenced this suit pursuant to Section 401(e) of the Labor-Management Reporting and Disclosure Act of 1959, as amended, 29 U.S.C. § 401 *et seq.* ("LMRDA"), seeking a judgment declaring void the March 1, 1999 election of officers conducted by Defendant Local 311, National Postal Mail Handlers Union, AFL-CIO, and ordering a new election under the Secretary's supervision. Having considered the record and the applicable law, for the reasons stated below, the Court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Cross-Motion for Summary Judgment.

Page 1

## I. Background

Albertus Lewis, Jr. ("Lewis"), a mail handler assigned to the Postal Service's Bulk Mail Center in Dallas, Texas ("Dallas BMC"), has been a member of the National Postal Mail Handlers Union, AFL-CIO ("NPMHU") since 1973. Defendant Local 311, a local union which represents mail handlers employed by the U.S. Postal Service ("Postal Service"), is chartered by the NPMHU, the exclusive bargaining representative for more than 50,000 Postal Service mail handlers.

In January 1999, Lewis was nominated to run for the offices of Dallas BMC Administrative Vice President and Local 311 Vice-President. Subsequent to Lewis's nomination, and prior to the election, the Judges of Election for Local 311 informed Lewis that he was disqualified from running for office based on his failure to meet the requirements of the Uniform Local Union Constitution of the NPMHU ("Local Union Constitution"), which required that each member be in good standing for the previous two years.[1] Specifically, the Judges of Election determined that Lewis had failed to pay his monthly union dues in June 1998, and thus did not satisfy the good standing requirement.

Article VIII, Sections 1 and 3 of the Local Union Constitution provide . . .

Section 1. Application for membership shall be made on the standard checkoff authorization form . . . .

Section 3. Members whose dues are not paid within 90 days after such dues are payable shall be automatically suspended. Dues shall be payable by the last day of each month. Each member of this Union shall be responsible for ensuring the timely payment of his/her membership dues. A member on leave from the Postal Service for whatever reason . . . is not relieved of his/her obligation to pay dues.

---

[1] Article V, Section 1 of the Local Union Constitution states:

In order to qualify as a candidate for any office in this Local Union, a regular member . . . shall be required to have been in good standing in the National Postal Mail Handlers Union for a period of two years immediately prior to nomination and current in the payment of dues . . . .

Under the collective bargaining agreement between the Postal Service and the NPMHU, Lewis participated in a "dues check-off,"[2] which authorized the Postal Service to deduct from his salary for each pay period his union dues, and remit those dues directly to the NPMHU. If an employee did not work or used paid leave during a particular pay period, the Postal Service did not pay the employee any salary for that pay period from which to make deductions, and the Postal Service did not make any deductions for union dues. In such circumstances, it was the employee's responsibility to pay the dues directly to the union.

The Postal Service did not pay Lewis any salary for work done in Pay Period 12, a two-week period from the end of May to the beginning of June 1998, because the Postal Service allegedly had no record of work performed by Lewis during that period. The Secretary of Labor contends that Lewis worked eight hours for the Postal Service during Pay Period 12. Plaintiff's Appendix, at 25-26, 30.

After he did not receive a paycheck for Pay Period 12, Lewis advised a Dallas BMC official that he worked eight hours on June 1-2 of 1998, and thus was entitled to a paycheck. Subsequent to obtaining a Form PS 1260 setting forth Lewis's claimed work hours, the Postal Service agreed to pay him for eight hours during Pay Period 12. Plaintiff's Appendix, at 30. That payment was included in his paycheck for Pay Period 14, which he received approximately one month after the end of Pay Period 12. Lewis received two pay stubs, one for Pay Period 12 and one for Pay Period 14, indicating that his union dues had been deducted for Pay Period 14 but showing no deduction for Pay Period 12. The record does not provide definitive evidence as to whether or not Lewis noted that distinction. Lewis did not pay his union dues for Pay Period 12 until November 1998, after the

---

[2] *See* 39 U.S.C. § 1205, which provides for dues check-off authorizations.

90-day grace period had expired. Had the dues been deducted by the Postal Service when the check for Pay Period 12 was given to Lewis, payment would have been timely.

Both before and after the Local 311 elections, Lewis appealed to the appropriate union officials the decision of the Judges of Election to disqualify him. His appeals were denied. The Secretary then instituted this suit on Lewis's behalf, asserting a violation of Section 401(e) of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), and asking this Court to order Local 311 to re-run its 1999 elections for the offices of Vice President of Local 311 and Dallas BMC Administrative Vice President.

## II. Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material facts exists and that, as a matter of law, the movant is entitled to judgment. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes about those facts will preclude the granting of summary judgment. *Id.* In a motion for summary judgment, the burden is on the movant to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990).

The nonmoving party, in order to resist a motion for summary judgment, must make a positive showing that a genuine dispute of material fact exists. *Anderson*, 477 U.S. 242 at 250. The record before the court must be considered in the light most favorable to the opposing party. *Harrison v. Byrd*, 765 F.2d 501 (5th Cir. 1985). However, bare allegations in briefs and pleadings are insufficient to withstand summary judgment. *Alizadeh v. Safety Stores, Inc.*, 802 F.2d 111, 113 (5th Cir. 1986).

## III. Analysis and Decision

Both Plaintiff and Defendant move for summary judgment on Plaintiff's claim under the LMRDA. The LMRDA, § 401(e) provides . . .

> No member whose dues have been withheld by his employer for payment to such organization pursuant to his voluntary authorization provided for in a collective bargaining agreement shall be declared ineligible to vote or be a candidate for office in such organization by reason of alleged delay or default in the payment of dues.

The Court grants Plaintiff's Motion for Summary Judgment, and denies Defendant's Cross-Motion for Summary Judgment, for the reasons explained below.

The facts of this case fall between the two situations presented by *English v. Cunningham*, 282 F.2d 848 (D.C. Cir. 1960) and *Colpo v. General Teamsters Local Union 326*, 659 F.2d 399 (3d Cir. 1981). In *English*, the court addressed the eligibility of three potential candidates for union office who had signed dues check-off authorizations. Two of those candidates were not owed a salary for a particular pay period, so the employer could not make any deductions for their union dues, and did not otherwise pay those dues. The issue presented was "whether, in the absence of an actual withholding or 'checkoff' of dues by an employer during a particular month because the employee had no earnings for that month, the employee himself, in order to retain eligibility status, must see that the dues are paid during that particular month." *English*, 282 F.2d at 849-50.

The *English* court held that in cases where there are no wages from which the employer may withhold union dues, it is the employee's responsibility to see to it that his union dues are paid. Therefore, the court held that the union properly declared the two candidates ineligible to run for union office.[3]

---

[3]The court also addressed the circumstances of the third candidate, who had received wages during the period in question, but whose dues were not paid. The court held that the employer's failure to deduct dues in this situation was the result of an error by the union, which

In *Colpo,* the employer paid the employee for the period in question, but failed to remit to the union the employee's union dues. The union declared the employee ineligible to run for office, even though the employer had simply failed to deduct the union dues from his salary. The court concluded that the employee's dues should have been deducted and paid to the union, and that the "employer default" could not be used as a basis for finding the employee ineligible to run for union office, given the language and purpose of Section 401(e).

In the instant case, although Lewis worked eight hours during Pay Period 12, the Postal Service did not pay him during that pay period. Even if that omission was the result of some paperwork error on Lewis's part, once the decision to make payment was made, dues should have been withheld and paid to the union by the Postal Service, pursuant to the dues check-off agreement between Lewis and the Postal Service. In Pay Period 14, the Postal Service remitted payment to Lewis for eight hours worked during Pay Period 12. The Postal Service's failure to deduct Lewis's union dues from wages earned during Pay Period 12, but paid during Pay Period 14, was a default of its obligations under its dues check-off agreement with Lewis. That fact renders this case more like *Colpo* than *English*, and the Court finds that the Postal Service's default could not be used as a basis for declaring Lewis ineligible to run for union office. Thus, the 1999 election was invalid and must be reconducted as to the positions of Vice President of Local 311 and Administrative Vice President of the Dallas BMC.

---

did not put the employee back on the checkoff list after his illness. The union's fault estopped it from declaring this employee ineligible to run for office due to nonpayment of dues. *See English,* 282 F.2d at 850.

## IV. CONCLUSION

For the reasons stated above, the Plaintiff's Motion for Summary Judgment is GRANTED and Defendant's Cross-Motion for Summary Judgment is DENIED.

**SO ORDERED.**

April 26, 2001.

_____
BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE